Exhibit A

RECYCLED

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| PHILADELPHIA FLYERS, INC. | TRUSTMARK INSURANCE COMPANY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 3601 South Broad Street<br>Philadelphia, PA 19148 | 400 Field Drive<br>Lake Forest, IL 60045 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NO. OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | X Complaint  ☒ Petition Action  ☒ Notice of Appeal<br>☒ Writ of Summons  ☒ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | | |
|---|---|---|---|---|
| ☐ 30. $50,000.00 or less<br>X 31. More than $50,000.00 | ☐ Arbitration<br>☐ Jury<br>☐ Non Jury<br>☐ Other | ☐ Mass Tort<br>☐ Savings Account<br>☐ Petition | X Commerce<br>☐ Minor Court Appeal<br>☐ Statutory Appeals | ☐ Settlement<br>☐ Minors<br>☐ W/D/Survival |

CASE TYPE AND CODE (*See Instruction G*)

1C, 1J

STATUTORY BASIS FOR CAUSE OF ACTION (*See Instruction H*)

42 Pa.C.S.A. § 8371

| RELATED PENDING CASES (*List by Docket Number - Indicate Whether the Related Cases Have Been Consolidated*) | IS CASE SUBJECT TO COORDINATION ORDER? | |
|---|---|---|
| None. | Yes | No |
| | ☐ | X |
| | ☐ | ☐ |
| | ☐ | ☐ |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petition/Appellant:

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/APPELLANT'S ATTORNEY | ADDRESS (*See Instruction J*) |
|---|---|
| Peter J. Deeb, Esquire | Frey, Petrakis, Deeb, Blum, Briggs & Mitts<br>1601 Market Street, 26th Floor<br>Philadelphia, PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| 215-563-0500 | 215-563-5532 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 42281 | pdeeb@fpdb.com |

| SIGNATURE | DATE |
|---|---|
| *[signature]* | 4/27/04 |

## Instructions for Completing Civil Cover Sheet

Rules of Court require that a Civil Cover Sheet be attached to any document commencing an action (whether the action is commenced by Complaint, Writ of Summons, Notice Appeal or by Petition). The information requested is necessary to allow the Court to properly monitor, control and dispose of cases filed. A copy of the Civil Cover Sheet must I attached to service copies of the document commencing an action. The attorney (or non-represented party) filing a case shall complete the form as follows:

**A.**  **Parties**

   i.   *Plaintiffs/Defendants*
        Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency or corporation, use the full name of the agency or corporation. In the event there are more than two plaintiffs and/or two defendants, list the additional parties on the Supplemental Parties Form. Husband and wife are to listed as separated parties.

   ii.  *Parties' Addresses*
        Enter the address of the parties at the time of filing of the action. If any party is a corporation, enter the address of the registered office of the corporation.

   iii. *Number of Plaintiffs/Defendants*
        Indicate the total number of plaintiffs and total number of defendants in the action.

**B.**  **Commencement Type:**  Indicate type of document filed to commence the action.

**C.**  **Amount in Controversy:**  Check the appropriate box.

**D.**  **Court Program:**  Check the appropriate box.

**E.**  **Case Types:**  Insert the code number and type of action by consulting the list set forth hereunder. To perfect a jury trial, the appropriate fees must be paid as provided by rules of court.

### Proceedings Commenced by Appeal

Minor Court
   5M  Money Judgment
   5L  Landlord and Tenant
   5D  Denial Open Default Judgment
   5E  Code Enforcement
       Other:
Local Agency
   2L  Libel and Slander
   5B  Motor Vehicle Suspension -
       Breathalizer
   5V  Motor Vehicle Licenses,
       Inspections, Insurance
   5C  Civil Service
   5K  Philadelphia Parking Authority
   5Q  Liquor Control Board
   5R  Board of Revision of Taxes
   5X  Tax Assessment Boards
   5Z  Zoning Board
   52  Board of Review
   51  Other
Other:

### Proceedings Commenced by Petition
8P Appointment of Arbitrators
8C    Name Change - Adult
8L Compel Medical Examination
8D    Eminent Domain
8E Election Matters
8F Forfeiture
8S Leave to Issue Subpoena
8M    Mental Health Proceedings
8G    Civil Tax Case - Petition
Other:

### Actions Commenced by Writ of Summons or Complaint

Contract
   1C  Contract
   1T  Construction
   1O  Other:

Tort
   2B  Assault and Battery
   4F  Fraud
   IJ  Bad Faith
   2E  Wrongful Use of Civil Process
       Other

Negligence
   2V  Motor Vehicle Accident
   2H  Other Traffic Accident
   1F  No Fault Benefits
   4M  Motor Vehicle Property Damage
   2F  Personal Injury - FELA
   2P  Other Personal Injury
   2S  Premises Liability - Slip & Fall
   2P  Product Liability
   2T  Toxic Tort
       *T1  Asbestos*
       *TZ  DES*
       *T2  Implant*
   3E  Toxic Waste
       Other:

Professional Malpractice
   2D  Dental
   2L  Legal
   2M  Medical
   4Y  Other:
1G Subrogation
Equity
E1 No Real Estate
   E2  Real Estate
   1D  Declaratory Judgment
   M1  Mandamus
Real Property
   3R  Rent, Lease, Ejectment
   Q1  Quiet Title
   3F  Mortgage Foreclosure
   1L  Mechanics Lien
   P1  Partition
       Prevent Waste
   1V  Replevin
1G Civil Tax Case - Complaint
Other:

**F.**  **Commerce Program**
Commencing January 3, 2000 the First Judicial District instituted a Commerce Program for cased involving corporations and corporate law issues, in general. If th action involves corporations as litigants or is deemed a Commerce Program case for other reasons, please check this block AND complete the information on th "Commerce Program Addendum." For further instructions, see Civil Trial Division Administrative Docket 01 of 1999.

**G.**  **Statutory Basis for Cause of Action**
If the action is commenced pursuant to statutory authority ("Petition Action"), the specific statute must be identified.

**H.**  **Related pending Cases**
All previously filed related cases, regardless of whether consolidated by Order of Court or Stipulation, must be identified.

**I.**  **Plaintiff's Attorney**
The name of plaintiff's attorney must be inserted herein together with other required information. In the event the filer is not represented by an attorney, the name of th filer, address, the phone number and signature is require.

The current version of the Civil Cover Sheet may be downloaded from the FJD's website
http://courts.phila.gov

**EXHIBIT A**

# COMMERCE PROGRAM ADDENDUM
## TO CIVIL COVER SHEET

This case *is* subject to the Commerce Program because it is not an arbitration matter and it falls within one or more of the following types (check all applicable):

— 1. Actions relating to the internal affairs or governance, dissolution or liquidation, rights or obligations between or among owners (shareholders, partners, members), or liability or indemnity of managers (officers, directors, managers, trustees, or members or partners functioning as managers) of business corporations, partnerships, limited partnerships, limited liability companies or partnerships, professional associations, business trusts, joint ventures or other business enterprises, including but not limited to any actions involving interpretation of the rights or obligations under the organic law (e.g., Pa. Business Corporation Law), articles of incorporation, by-laws or agreements governing such enterprises;

X 2. Disputes between or among two or more business enterprises relating to transactions, business relationships or contracts between or among the business enterprises. Examples of such transactions, relationships and contracts include:
     — a. Uniform Commercial Code transactions;
     — b. Purchases or sales of business or the assets of businesses;
     — c. Sales of goods or services by or to business enterprises;
     — d. Non-consumer bank or brokerage accounts, including loan, deposit cash management and investment accounts;
     — e. Surety bonds;
     — f. Purchases or sales or leases of, or security interests in, commercial, real or personal property; and
     — g. Franchisor/franchisee relationships.

— 3. Actions relating to trade secret or non-compete agreements;

— 4. "Business torts," such as claims of unfair competition, or interference with contractual relations or prospective contractual relations;

— 5. Actions relating to intellectual property disputes;

— 6. Actions relating to securities, or relating to or arising under the Pennsylvania Securities Act;

— 7. Derivative actions and class actions based on claims otherwise falling within these ten types, and consumer class actions other than personal injury and products liability claims;

— 8. Actions relating to corporate trust affairs;

XX 9. Declaratory judgment actions brought by insurers, and coverage dispute and bad faith claims brought by insureds, where the dispute arises from a business or commercial insurance policy, such as a Comprehensive General Liability policy;

— 10. Third-party indemnification claims against insurance companies where the subject insurance policy is a business or commercial policy and where the underlying dispute would otherwise be subject to the Commerce Program, not including claims where the underlying dispute is principally a personal injury claim.

**FREY, PETRAKIS, DEEB, BLUM,**
**BRIGGS & MITTS, P.C.**
By:    Peter J. Deeb, Esquire
Attorney Id. No.:  42281
1601 Market Street, 26th Floor
Philadelphia, PA  19103
(215) 563-0500

Attorneys for Plaintiff,
Philadelphia Flyers, Inc.

| | | |
|---|---|---|
| PHILADELPHIA FLYERS, INC.,<br>3601 South Broad Street<br>Philadelphia, PA  19148 | : | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>TRIAL DIVISION |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| TRUSTMARK INSURANCE COMPANY,<br>400 Field Drive<br>Lake Forest, IL  60045 | : | |
| | : | |
| | : | APRIL TERM, 2004 |
| Defendant. | : | NO. _____  **007085** |

JURY FEE PAID

## NOTICE

You have been sued in court.  If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.  You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.  You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW.  THIS OFFICE CAN PROVIDE YOU WITH INFORMATION ABOUT HIRING A LAWYER.

IF YOU CANNOT AFFORD TO HIRE A LAWYER, THIS OFFICE MAY BE ABLE TO PROVIDE YOU WITH INFORMATION ABOUT AGENCIES THAT MAY OFFER LEGAL SERVICES TO ELIGIBLE PERSONS AT A REDUCED FEE OR NO FEE.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION SERVICE
One Reading Center
Philadelphia, PA 19107
Telephone: 215-238-1701

## AVISO

Le han demandado a usted en la corte. Si usted quiere defen derse de estas demandas expuestas en las paginas siguientes, usted tiene veinte dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO IMMEDIATAMENTE, SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

Asociacion De Licenciados De Filadelfia
Servicio De Referencia E Informacion Legal
One Reading Center
Filadelfia, Pennsylvania 19107
Telefono: (215) 238-1701

**THIS IS A COMMERCE
PROGRAM CASE.  THIS IS NOT
AN ARBITRATION MATTER.
AN ASSESSMENT OF
DAMAGES HEARING IS
REQUIRED.**

**FREY, PETRAKIS, DEEB, BLUM,**       Attorney for Plaintiff,
**BRIGGS & MITTS, P.C.**       Philadelphia Flyers, Inc.
By:    Peter J. Deeb, Esquire
Attorney Id. No.:  42281
1601 Market Street, 26th Floor
Philadelphia, PA  19103
(215) 563-0500

| | |
|---|---|
| PHILADELPHIA FLYERS, INC., : | COURT OF COMMON PLEAS |
| 3601 South Broad Street : | PHILADELPHIA COUNTY |
| Philadelphia, PA  19148 : | TRIAL DIVISION |
| : | |
|            Plaintiff, : | **JURY TRIAL DEMANDED** |
| : | |
|    v. : | |
| : | |
| TRUSTMARK INSURANCE COMPANY, : | |
| 400 Field Drive : | |
| Lake Forest, IL  60045 : | |
| : | APRIL TERM, 2004 |
|            Defendant. : | NO. _____ |

## COMPLAINT

Plaintiff, Philadelphia Flyers, Inc., hereby brings the following

Complaint against Defendant Trustmark Insurance Company, and in support

thereof avers as follows:

### The Parties

1.      Plaintiff Philadelphia Flyers, Inc. ("Plaintiff" or "Flyers") owns and

operates a professional hockey team that is a member of the National Hockey

League and maintains corporate offices and a principal place of business at the Wachovia Center, 3601 S. Broad Street, Philadelphia, PA 19148.

2.     Upon information and belief, Defendant Trustmark Insurance Company ("Trustmark") is a national insurance company with a principal place of business at 400 Field Drive, Lake Forest, IL 60045.

## Jurisdiction and Venue

3.     Jurisdiction and venue exist before this Court as many of the events giving rise to the present action took place within the Commonwealth of Pennsylvania and both Plaintiff Flyers and Defendant Trustmark, a national insurance company, conduct business within the County of Philadelphia.

## Factual Background

4.     Defendant Trustmark entered into an insurance contract with the National Hockey League Trust for the provision of Temporary Total Disability ("TTD") coverage for certain players on each of the National Hockey League teams, including the Flyers, for the period of October of 2001 through April of 2002.

5.     Although the contract was between Trustmark and the National Hockey League Trust, the Flyers were compelled to take part in the coverage as a member of the National Hockey League and were compelled to pay for the coverage provided, as negotiated by the National Hockey League Trust and Trustmark.

6.     Alternatively, the Flyers entered into a contract with Defendant Trustmark, through the National Hockey League Trust, for the provision of Temporary Total Disability ("TTD") coverage for certain players on the Flyers, for the period of October of 2001 through April of 2002.

7.    The Flyers were at no time provided with a copy of the TTD Insurance Policy; however, they were provided with a copy of a Certificate of Insurance from Trustmark, a true and correct copy of which is attached hereto as Exhibit "A".

8.    The policy apparently provides for the reimbursement of an insured player's salary, subject to certain limitations, during a period of disability that results in the player's inability to play hockey.

9.    In the Fall of 2001, Rick Tocchet, one of the insured players as defined by the Certificate of Insurance issued by Trustmark, was injured and disabled such that he was incapable of playing hockey.

10.    Mr. Tocchet was diagnosed with left knee patellar tendonitis, among other issues involving his back and left leg.

11.    During the course of his disability, Mr. Tocchet was treated and/or supervised through rehabilitation by team physician, Dr. Arthur Bartolozzi; personal physician, Dr. John Gregg; and the Flyers' training staff and coaches.

12.    Copies of all of the records of Dr. Bartolozzi and Dr. Gregg and the Flyers' training staff have been turned over to Defendant Trustmark.

13.    The treatment underwent by Mr. Tocchet included quadriceps, hamstring and lower extremity strengthening, under the supervision of the Flyers training staff.

14.    Further, a period of time was necessary to permit the injury to fully heal and to allow the knee to recover full strength, flexibility and endurance.

15.    Rick Tocchet was not permitted to skate, much less play hockey, from the Fall of 2001 through January of 2002.

16.    On or about January 16, 2002, Mr. Tocchet was cleared by Dr. Bartolozzi to resume skating.   However, his rehabilitation and strengthening exercises continued under the supervision of the Flyers' training staff.

17.    Rick Tocchet's resumption of his hockey career was dependent upon his ability to function within his physical limitations based upon his knee injury.   Both he and the Flyers' training staff and coaches had to reach the conclusion that his knee was ready to face the stress of playing professional ice hockey, before he could resume playing.

18.    After much hard work and rehabilitation, Mr. Tocchet and the Flyers' staff felt that he was ready to return to the Flyers' roster and resume his hockey career in mid-February of 2002, at which time he resumed play for the Flyers.

19.    In light of the injury suffered by Mr. Tocchet, the Flyers made a claim, pursuant to the terms and conditions of the TTD insurance policy issued by Trustmark, for reimbursement of Mr. Tocchet's salary for the 27 games in which he was unable to play hockey, taking place between December 16, 2001 and February 12, 2002.

20.    In response to the Flyers' claim, Trustmark reimbursed the Flyers for 15 games missed by Mr. Tocchet occurring between December 16, 2001 and January 16, 2002.

21.    However, Trustmark refused to reimburse the Flyers for 12 games missed by Mr. Tocchet between January 17, 2002 and February 12, 2002.

22.    Notwithstanding repeated demand by the Flyers and the provision of detailed records memorializing the rehabilitation of Mr. Tocchet's knee between January 17, 2002 and February 12, 2002, Defendant Trustmark has refused to honor the TTD insurance policy in place and reimburse the Flyers for the additional games missed by Mr. Tocchet.

<u>Count I - Breach of Contract</u>

23.    Plaintiff hereby incorporates by reference paragraphs 1 through 22 of its Complaint.

24.    ~~Plaintiff Flyers, through the National Hockey League Trust, and~~ Defendant Trustmark have entered into a contract for the provision of a TTD insurance policy that covers certain insured hockey players on the Plaintiff Flyers between October of 2001 and April of 2002.

25.    The Flyers have been compelled to pay for the coverage provided, as a member of the National Hockey League.

26.    The Flyers have submitted a valid claim for an insured player pursuant to the terms of the Policy of Insurance provided by Defendant Trustmark.

27.    Defendant Trustmark has denied a portion of the claim submitted by the Plaintiff Flyers without a good faith basis.

28.    The partial denial of the Plaintiff Flyers' claim constitutes a breach of contract by Defendant Trustmark.

29.    As a direct and proximate result of the breach of contract by Defendant Trustmark, the Flyers have suffered damages in an amount in excess of $300,000, plus interest.

WHEREFORE, Plaintiff Philadelphia Flyers, Inc. demands judgment in its favor against Defendant Trustmark Insurance Company in an amount in excess of $300,000, plus interest, costs, and such other relief as is deemed reasonable by the Court.

### Count II – Breach of Contract/Third Party Beneficiary

30.    Plaintiff hereby incorporates by reference paragraphs 1 through 29 of its Complaint.

31.    The National Hockey League Trust and Defendant Trustmark have entered into a contract for the provision of a TTD insurance policy that covers certain insured hockey players on the Plaintiff Flyers between October of 2001 and April of 2002.

32.    The Flyers are an intended third party beneficiary of the Contract between Defendant Trustmark and the National Hockey League Trust.

33.    The Flyers have submitted a valid claim for an insured player pursuant to the terms of the Policy of Insurance provided by Defendant Trustmark.

34.    Defendant Trustmark has denied a portion of the claim submitted by the Plaintiff Flyers without a good faith basis.

35.    The partial denial of the Plaintiff Flyers' claim constitutes a breach of contract by Defendant Trustmark.

36.    As a direct and proximate result of the breach of contract by Defendant Trustmark, the Flyers, as an intended third-party beneficiary, have suffered damages in an amount in excess of $300,000, plus interest.

WHEREFORE, Plaintiff Philadelphia Flyers, Inc. demands judgment in its favor against Defendant Trustmark Insurance Company in an

amount in excess of $300,000, plus interest, costs, and such other relief as is deemed reasonable by the Court.

<u>Count III – Bad Faith</u>

37.    Plaintiff hereby incorporates by reference paragraphs 1 through 36 of its Complaint.

38.    Plaintiff Flyers, through the National Hockey League Trust, and Defendant Trustmark have entered into a contract for the provision of a TTD insurance policy that covers certain insured hockey players on the Plaintiff Flyers between October of 2001 and April of 2002.

39.    The Flyers have been compelled to pay for the coverage provided as a member of the National Hockey League.

40.    The Flyers have submitted a valid claim for an insured player pursuant to the terms of the Policy of Insurance provided by Defendant Trustmark.

41.    Defendant Trustmark has denied a portion of the claim submitted by the Plaintiff Flyers without a good faith basis.

42.    The intentional partial denial of the Plaintiff Flyers' claim without good faith constitutes a violation of the Pennsylvania Statute prohibiting bad faith on the part of an insurance company toward an insured.  42 Pa.C.S.A. §8371.

43.    As a direct and proximate result of the bad faith and wrongful conduct by Defendant Trustmark, the Flyers have suffered damages in an amount in excess of $300,000, plus interest.

44.    The wrongful conduct of Defendant Trustmark in the bad faith partial denial of the Flyers' claim warrants the imposition of attorneys' fees and costs pursuant to the Pennsylvania Bad Faith Statute.

45.    The conduct of Defendant Trustmark in the bad faith partial denial of the Flyers' claim is egregious and outrageous and warrants the imposition of punitive damages pursuant to the Pennsylvania Bad Faith Statute.

WHEREFORE, Plaintiff Philadelphia Flyers, Inc. demands judgment in its favor against Defendant Trustmark Insurance Company in an amount in excess of $300,000, plus punitive damages, attorneys' fees, interest, costs, and such other relief as is deemed reasonable by the Court.

### JURY DEMAND

Please take notice that Plaintiff Philadelphia Flyers, Inc. hereby demands a trial by jury on all issues so triable, pursuant to Pa.R.C.P. 1007.1.

By:    _____
Peter J. Deeb, Esquire
Atty. I.D. No. 42281
FREY, PETRAKIS, DEEB, BLUM,
BRIGGS & MITTS, P.C.
1601 Market Street, 26th Floor
Philadelphia, PA  19103
(215) 563-0500

Attorney for Plaintiff
Philadelphia Flyers, Inc.

Dated:  April 27, 2004

## VERIFICATION

I, Lewis R. Bostic, state that I am authorized to make this Verification on the Plaintiff's behalf, and that the facts set forth in the preceding Complaint are true and correct to the best of my knowledge, information and belief. This Verification is made with knowledge of the penalties contained in 18 PaCSA § 4904, relating to unsworn verification to authorities.

By: _____
Lewis R. Bostic, Vice President

Dated: 26 April 04

**TRUSTMARK INSURANCE COMPANY (MUTUAL)**
400 Field Drive
Lake Forest, Illinois 60045
(847) 615-1500
("We, Us and Our")

This is the Certificate of Insurance ("Certificate") while the Policy is in force. It explains the rights and benefits that are determined by the Policy. The Policy is a contract between the Policyholder and Us. The Policyholder is the National Hockey League Trust.

The Policy, together with the Certificate attached thereto and any amendments or riders thereto, constitutes the agreement under which benefit payments are made. We will pay the benefits set forth in the Policy. Benefit payment is governed by all of the terms, exclusions, limitations and conditions of the Policy. The Policy may be amended by written agreement between the NHL and Us without the consent of or notice to the Club, any Insured Player or beneficiary. Any such amendment will not affect any benefit due before the amendment takes effect.

The Policy is administered by BWD Group, LLC ("BWD"), BWD Plaza, P.O. Box 9050, Jericho, New York 11753-8950. A copy of the Policy is kept at BWD. It may be inspected by any Club, Insured Player or beneficiary during normal business hours. We reserve the right to delegate such duties and responsibilities of Ours to BWD, as administrator, as agreed upon by the NHL, BWD and Us.

This Certificate automatically supersedes any other Certificate We have previously issued to the Club or any Insured Player.

**Please read this Certificate carefully.**


J. Grover Thomas, Jr.
President & Chief Executive Officer


Frank G. Gramm
Corporate Secretary & General Counsel.

SCHEDULE

| | |
|---|---|
| POLICY NUMBER: | NHL01 |
| CERTIFICATE NUMBER: | 2001-1432 |
| SCHEDULE DATE: | March 16, 2001 |
| CLUB: | PHILADELPHIA FLYERS |
| BENEFICIARY: | PHILADELPHIA FLYERS |
| INSURED PLAYER: | RICK TOCCHET |
| COVERAGE EFFECTIVE DATE: | 12:01 a.m. October 13, 2000 |
| COVERAGE PERIOD: | From: 12:01 a.m. October 13, 2000<br>To:    12:01 a.m. April 16, 2002 |

ELIMINATION PERIOD:                    30 Regular Season Games

COVERED SALARY*:

| For Policy Year Beginning: | Covered Salary is: | Per Game Benefit: |
|---|---|---|
| October 13, 2000 | $ 2,200,000.00 | $ 21,463.41 |
| September 1, 2001 | $ 2,200,000.00 | $ 21,463.41 |

CONTRIBUTION DUE*:

| For Policy Year Beginning: | Contribution is: |
|---|---|
| October 13, 2000 | $ 57,536.47 |
| September 1, 2001 | $ 67,100.00** |

* Covered Salary, Per Game Benefit and Contributions are subject to adjustment pursuant to the terms and conditions of the Policy. Contributions after the Policy Year of issue are subject to adjustment by Us. This Schedule replaces any previously dated Schedule.

** A 36% final season Contribution credit will apply toward the club's subsequent plan year Contribution if the current coverage is not cancelled in the final season or extended to include future seasons, and no claim is paid in the final season of coverage.

2

# TABLE OF CONTENTS

Begins on Page

**Schedule of Benefits**                                          2

**Definitions**                                                  4
    Club
    Coverage Period
    Covered Salary
    Elimination Period
    Employment Contract
    Hazardous Sports
    Injury
    Insured Player
    Maximum Benefit Period
    NHL
    Period of Disability
    Physician
    Player
    Policy Year
    Presumptive Disability\Presumptively Disabled
    Regular Season Game(s)
    Salary
    Sickness
    Temporary Total Disability\Temporarily Totally Disabled

**Benefit Provisions**                                           5
    Temporary Total Disability Benefits
    Elimination Period
    Recurrent Disability
    Concurrent Disability
    Rehabilitation Benefits
    Benefit Commutation
    Salary Commutation

**Exclusions, Limitations and Termination**                      7
    Exclusions
    Limitations
    Termination

**Claim Provisions**                                             8
    Notice of Injury or Sickness
    Notice of Claim; Claim Forms; Proof of Disability
    Payment of Claims; Assignment
    Application Statements
    Payment Error
    Fraudulent Claim Submission
    Medical Records and Examination
    Claim Appeal
    Legal Actions
    Arbitration

3

## DEFINITIONS

**Club:** One of the current 26 professional ice hockey teams in the National Hockey League or an expansion team added to the National Hockey League while the Policy is in force.

**Coverage Period:** The period of time during which an Insured Player is covered for Temporary Total Disability as shown on the Schedule.

**Covered Salary:** The Salary which the Company has approved for coverage, as shown on the Schedule.

**Elimination Period:** The number of Regular Season Games that an Insured Player must miss due to Temporary Total Disability for the same Injury or Sickness before any benefits are payable.   The Elimination Period is shown on the Schedule.

**Employment Contract:** A binding contract of employment between a Club and an individual which requires the individual to perform the duties of a professional ice hockey player in the National Hockey League.

**Hazardous Sports:** The following activities are deemed to be Hazardous Sports:

a.  American Football (tackle and professional);
b.  Boxing, except aerobic boxing;
c.  Bungee Jumping;
d.  Hang Gliding;
e.  Horse Racing;
f.  Mountain Climbing;
g.  Motor Car Racing;
h.  Off-Road Motor Biking;
i.  Parachuting;
j.  Power Boating in excess of 55 miles per hour;
k.  Professional Soccer;
l.  Professional Rollerblading;
m.  Scuba Diving;
n.  Snowmobiling;
o.  Sky Diving;
p.  Wrestling; and
q.  Any of the following activities when performed on a competitive basis:
    1.  Martial Arts;
    2.  Motor Biking;
    3.  Snow Skiing; and
    4.  Water Skiing.

**Injury:** Accidental bodily damage sustained by an Insured Player during the Coverage Period which is not specifically excluded from coverage.

**Insured Player:** A Player: (a) who has an Employment Contract with a Club; (b) on whose behalf the Club has made application for Temporary Total Disability coverage which is approved by Us; and (c) whose coverage is in force under this Certificate.

**Maximum Benefit Period:** At any point in time, the number of Regular Season Games which remain for the Club during the Insured Player's Coverage Period, subject to the Elimination Period.

**NHL:** National Hockey League.

4

**Period of Disability:** The period of time during which an Insured Player has a Temporary Total Disability resulting from a single cause or related causes.

**Physician:** A licensed medical doctor, surgeon or dentist practicing within the scope of such license other than: (a) any Club owner or employee, except the designated team Physician; (b) any Player's spouse; or (c) the parent, grandparent, child or sibling of any Player or Player's spouse.

**Player:** An individual who plays professional hockey for a Club.

**Policy Year:** The 12-month period beginning on the Effective Date of the Policy and each Policy anniversary date thereafter. The first Policy Year for an Insured Player shall begin on his Coverage Effective Date and end on the immediately subsequent Policy anniversary date.

**Presumptive Disability\Presumptively Disabled:** Any of the following conditions when certified as total, permanent and irrecoverable by a Physician:

1.  Loss of sight in both eyes;
2.  Loss of the use of one hand or one foot;
3.  Quadriplegia; or
4.  Paraplegia.

**Regular Season Game(s):** All games during a Policy Year designated by the NHL as regular season play for the Club, including any game required to break a tie.

**Salary:** A Player's current and deferred compensation under his Employment Contract. Additional compensation, including but not limited to a signing bonus, may be included in Covered Salary with Our prior approval. Compensation that is not yet earned, including but not limited to a performance bonus, is excluded from Covered Salary. Any compensation which becomes earned may then be included in Covered Salary in the season in which it is paid with Our prior written approval.

**Sickness:** Illness or disease sustained by an Insured Player during the Coverage Period which is not specifically excluded from coverage.

**Temporary Total Disability\Temporarily Totally Disabled:** The inability of an Insured Player to perform the duties of a professional ice hockey player in the NHL which:

1.  Is due to Injury or Sickness; and
2.  Is certified by a Physician.

---

## BENEFIT PROVISION

**Temporary Total Disability Benefits:** Benefits are payable for each Regular Season Game in which an Insured Player is unable to participate due to a Temporary Total Disability. This includes any Temporary Total Disability resulting from activities specifically excluded by the Employment Contract. This also includes any Regular Season Game which is suspended or canceled. All Benefits are subject to:

1.  Satisfaction of the Elimination Period by such Insured Player;
2.  Definitions, limitations, exclusions and other terms of the Policy;
3.  The Club's actual continuation of its payment of the Insured Player's Salary; and
4.  The maximum per game benefit and the Maximum Benefit Period.

6

An Insured Player must be under the regular care of the Physician who certifies in writing the Insured Player's Temporary Total Disability, unless regular care is not necessary due to the nature of such Temporary Total Disability.

Per Game benefits are payable following the satisfaction of the Elimination Period in the amounts indicated on the Schedule and shall be limited to the lesser of:

a.    The maximum Per Game Benefit as indicated in the Policy;
b.    Eighty (80) percent of the Insured Player's per game salary; or
c.    Seventy (70) percent of the Insured Player's per game salary, if the Insured Player is the designated beneficiary.

The per game salary for any Policy Year shall equal the Covered Salary for that Policy Year divided by the number of Regular Season Games in that Policy Year. Any increase or decrease in Salary during the Policy Year must be approved by Us for determining the per game Covered Salary. We also reserve the right to decrease the amount of the per game salary with retroactive effect to coincide with changes to the Employment Contract should a Club decrease an Insured Player's Salary for any Policy Year and not seek Our approval in determining the new per game Covered Salary.

Benefits are payable to the Club unless otherwise assigned by Club or another beneficiary is designated on the Schedule. Assignment of Benefits is subject to prior approval by Us.

Elimination Period: The Elimination Period does not include any Regular Season Game which is suspended or canceled, unless the Club continues its actual payment of the Insured Player's Salary. A separate Elimination Period must be met for each Period of Disability.

Recurrent Disability:  If after a Period of Disability, the Insured Player is released by the Physician to return to full-time play for at least 41 Regular Season Games, any subsequent disability will be considered a new Period of Disability and subject to a new Elimination Period.

If after release by the Physician, the Insured Player does not return to full-time play for at least 41 Regular Season Games, any subsequent disability will be considered part of a prior Period of Disability and not subject to a new Elimination Period; unless, the subsequent disability is the result of:

a.    An injury to a different part of the Insured Player's body; or
b.    A Sickness due to a cause entirely different from the cause of the prior Period of Disability;

then the subsequent disability will be considered a new Period of Disability and subject to a new Elimination Period.

Concurrent Disability: Concurrent periods of Temporary Total Disability, whether due to a related or different injury or Sickness, shall be aggregated as one Period of Disability. Benefits shall only be paid once during any Period of Disability, regardless of the number of causes of Temporary Total Disability. A separate Elimination Period will be applied to each Period of Disability.

Rehabilitation Benefits: Club may request a period of rehabilitation after a Period of Disability for which benefits have been paid.  A Physician must release the Insured Player from Temporary Total Disability to return to the duties of a professional ice hockey player in the NHL.

A period of rehabilitation means that the Insured Player's official recorded playing time is limited to the greater of:

a.    Five (5) minutes; or
b.    Twenty-five (25) percent of the Insured Player's average playing time per game for the most recent 82 Regular Season Games in which the Insured Player has played.

Rehabilitation benefits are payable at Our discretion. If approved, benefits may be continued for only:

a.    The first six (6) consecutive Regular Season Games following the Physician's release of the Insured Player from Temporary Total Disability; or
b.    The first six (6) consecutive minor league season games with the Club's minor league affiliate following the Physician's release of the Insured Player from Temporary Total Disability. The Insured Player may exceed the participation limits in three of the six minor league games and still receive benefits.

In no event will rehabilitation benefits be paid for more than a combined total of six minor league season and Regular Season Games. Rehabilitation benefits and participation limits shall be determined independently for each game. Rehabilitation benefits shall be paid only once for the same disability in the same Policy Year.

**Benefit Commutation:** Temporary Total Disability benefits may be commuted to a present value lump sum if:

a.    The Insured Player is Presumptively Disabled; or
b.    A Physician has certified that the Insured Player is otherwise permanently disabled and will never again be able to perform the duties of a professional ice hockey player in the NHL.

Commuted benefits, if approved by Us, shall be paid as full settlement of any remaining benefits. The present value discount factor shall be agreed upon by Club and Us. Future regular care by a Physician is not required upon payment of approved commuted benefits.

**Salary Commutation:** A Temporarily Totally Disabled Insured Player's Salary may be commuted to a present value lump sum by a Club. Benefits shall continue to be payable as if the Salary had not been commuted. The Club shall be considered as obligated to continue the Insured Player's Salary for the remainder of the Period of Disability.


## EXCLUSIONS, LIMITATIONS and TERMINATION

**Exclusions:** No benefits are payable for any Insured Player's Temporary Total Disability caused by, resulting from or in connection with:

1.    Participation by the Insured Player in a Hazardous Sport unless the Club:
    a.    Issues written consent for the Insured Player to so participate;
    b.    Continues to pay the Insured Player his Salary; and
    c.    Obtains Our prior approval.

2.    Participation by the Insured Player in any activity which is not a Hazardous Sport but is specifically excluded in the Employment Contract, unless the Club continues to pay the Insured Player's Salary.

3.    Any condition or activity specifically excluded from coverage by endorsement or rider.

4.    Commission of a criminal act which results in the Insured Player's conviction of an offense which

is punishable by imprisonment for more than one year. This shall not include any conviction or offense arising from the operation of a motor vehicle.

5.    The Insured Player being under the influence of any drug or narcotic which is not lawfully available, unless administered as prescribed or advised by a Physician for a medical condition other than drug addiction.

6.    Self-destruction or attempted self-destruction or intentional self-inflicted Injury or Sickness, by the Insured Player while sane.

**Limitations:** Except for benefits accumulated as due but unpaid, no benefits will be paid or continued:

1.    On or after the date the Insured Player dies;

2.    On or after the date the Insured Player is released by a Physician to return to play professional ice hockey in the NHL, except for approved rehabilitation benefits or in accordance with the recurrent disability provision herein;

3.    During any Elimination Period; or,

4.    For any Injury or Sickness first occurring or manifesting after termination of coverage with Us, subject to the termination provision of the Policy.

**Termination:** Coverage for any Insured Player will end on the earliest of:

1.    The date the Policy is terminated, subject to any elected runoff period.

2.    The end of the Coverage Period.

3.    The termination of the Employment Contract between the Club and the Insured Player. Such termination shall not apply if:

    a.    A successor Employment Contract is concurrently executed and accepted by Us; or
    b.    The Insured Player is traded to another Club. Coverage, to the extent provided on the date of the trade, shall be transferred to the new Club.

Termination of coverage shall not affect any benefit which accrued while coverage was in effect.

---

## CLAIM PROVISIONS

**Notice of Injury or Sickness:** Written notice of any Injury to or Sickness of an Insured Player must be provided to Us within 20 calendar days of such Injury or Sickness being reasonably expected to result in a claim for benefits. A claim for benefits will not be denied or reduced if notice is given after such time period but as soon as is reasonably possible.

**Notice of Claim; Claim Forms; Proof of Disability:** When the notice of Injury or Sickness is received, forms for filing a proof of disability will be sent to the Club. If these forms are not sent within 15 days, the proof of disability requirement will be considered met by giving Us a written statement of the nature and extent of the Injury or Sickness within the proof of disability time limit.

8

Written proof of disability must be completed and returned to Us within 90 days of a Temporary Total Disability or as soon thereafter as reasonably possible. Except for absence of legal capacity, no claim for benefits will be accepted after one year from the date of the Temporary Total Disability.

Written proof of disability shall include medical reports, Physician's statements, operative reports and any other supporting documentation related to the diagnosis and treatment of the Injury or Sickness as determined by Us.

Subsequent proof of disability, as determined to be satisfactory by Us, shall be required on no less than a monthly basis while an Insured Player is Temporarily Totally Disabled and receiving benefits. We will determine, based on the nature of the Temporary Total Disability, when subsequent proof of disability is no longer necessary.

**Payment of Claims; Assignment:** Benefits will be paid no later than 60 days following the end of a month of Temporary Total Disability for which benefits are payable and all required proof of disability has been received. Benefits shall be paid to the Club unless otherwise assigned to the Insured Player or other beneficiary. Any assignment of benefits must be in writing and approved by Us prior to the date of payment. Payment of benefits will discharge Us from all liability to Policyholder, the NHL, the Club, Insured Player or any assignee or other beneficiary. Benefits, to the extent permitted by law, shall be exempt from attachment or claims of creditors of Policyholder, the NHL or the Club.

**Application Statements:** All statements made in any application, in the absence of fraud, shall be deemed representations and not warranties. No statement made in any application or knowledge by any Club or Player shall be imputed to any other Club or Player. No statement will be used to contest the validity of any Insured Player's coverage or reduce benefits unless: (a) it is in writing and signed by Policyholder, the NHL, any Club or Player; and (b) a copy is furnished to Policyholder, the NHL or Club.

After an Insured Player's coverage has been in effect for two (2) years, during the lifetime of that person, only fraudulent misstatements in an application may be used to void coverage or deny any claim. Any increase in coverage will begin a new two (2) year contestable period for such increase.

**Payment Error:** Any benefit paid in error may be recovered from the Club or designated beneficiary receiving the incorrect payment. At Our option, We may offset the overpayment against future benefit payments due the Club having received, or whose designated beneficiary received, such benefits. The acceptance of Premium or paying other benefits shall not constitute a waiver of Our rights under this section. Recovery or offset shall be in addition to any other remedies available to Us at law or in equity.

**Fraudulent Claim Submission:** If any Club or Insured Player knowingly submits or participates in the submission of a claim for benefits which contains false or misleading information that would have the effect of: (a) increasing the benefit payable; or (b) paying a benefit not otherwise payable, We shall have the right to rescind that Insured Player's coverage to the date the fraud was perpetrated. Such rescission is without prejudice to any other right or remedy available to Us at law or in equity.

**Medical Records and Examination:** With written authorization, We may obtain an Insured Player's medical records. We have the right, at Our expense, to have an Insured Player examined as often as reasonably necessary while a claim on that Insured Player is pending or during the course of a claim.

**Claim Appeal:** If any claim for benefits is denied, in whole or in part, Club shall be notified in writing. Such denial shall include:

a.    The specific reason for the denial;

b.    The Policy provision upon which the denial is made; and

c.    An explanation of the claim appeals process; or
d.    Any additional information or documentation which may be required to perfect a claim with an explanation of why it is needed.

The Club may request an appeal of a claim denial by submitting: (a) a written request for appeal within 180 days of receiving the claim denial; (b) any supporting documentation; and (c) any issues or comments, in writing. The Club may review any documents pertinent to the claim denial, subject to any privacy restrictions. A decision will be made by Us no later than 60 days after receipt of the appeal request and all supporting documentation, except in special circumstances a decision will be made by Us within 90 days of such receipt.

**Legal Actions:** No legal action for benefits may be brought against Us within 60 days after written proof of disability has been sent to Us. No such action may be brought more than three (3) years from the time written proof of disability is required to be given. All legal actions, whatever the nature, are subject to: (a) full compliance with all terms, exclusions, limitations and conditions of the Policy as a condition precedent; and (b) arbitration.

**Arbitration:** Any dispute arising from this contract between the Policyholder, the NHL, or any club on one hand, and BWD or Us on the other hand shall be submitted to binding arbitration. The Commercial Arbitration Rules of the American Arbitration Association shall apply, except with respect to selection of the arbitration panel and location.

Each party to the arbitration shall select one arbitrator. A third independent arbitrator shall be selected by the first two arbitrators. Arbitration shall be held in a location agreed to by the parties. If no location can be agreed upon, arbitration shall be held at the then current main corporate office of the American Arbitration Association. If the American Arbitration Association is not in existence or its offices unavailable, arbitration shall be held in Our home office.

The costs of arbitration shall be borne equally by all of the parties thereto.

G448-14



**ENDORSEMENT NO. 1**

attaching to and forming part of Policy No. NHL01/Certificate No. 2001-1432

Issued To:    Philadelphia Flyers
              IRO Rick Tocchet

It is hereby noted and agreed that

with effect from 12:01 a.m. September 1, 2001; the Contributions due under the above Certificate are amended as follows:

| For Policy Year Beginning: | Contribution is: | Due Date: |
|---|---|---|
| September 1, 2001 | $ 60,500.00** | September 1, 2001 |

** A 36% final season Contribution credit will apply toward the club's subsequent plan year Contribution if the current coverage is not cancelled in the final season or extended to include future seasons, and no claim is paid in the final season of coverage.

All Contributions shown are subject to adjustment in accordance with the terms and conditions of the Policy/Certificate, as well as exchange rate fluctuations, as applicable.

**ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.**

Effective Date:    September 1, 2001

Date of Issue:    May 9, 2002

Trustmark Insurance Company

By: _____

Corporate Secretary