# IN THE UNITED STATES DISTRICT COURT FOR
# THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |
|---|---|
| PHILADELPHIA FLYERS, INC., <br> 3601 South Broad Street <br> Philadelphia, PA 19148 | : <br> :    CIVIL ACTION NO. <br> :    2:04-CV-2322 |
|     Plaintiff, | : |
| v. | : |
| TRUSTMARK INSURANCE COMPANY, <br> 400 Field Drive <br> Lake Forest, IL 60045 | : |
|     Defendant. | : |

## **O R D E R**

AND NOW, this _____ day of _____, 2004, upon consideration of Defendant, Trustmark Insurance Company's Motion to Compel Arbitration and to Stay Proceedings, and Plaintiff, Philadelphia Flyers, Inc.'s response thereto, it is hereby ORDERED and DECREED that said Motion is DENIED with prejudice.

                            _____
                                J.

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILADELPHIA FLYERS, INC., : <br> 3601 South Broad Street : CIVIL ACTION NO. <br> Philadelphia, PA  19148 : 2:04-CV-2322 <br>  : <br> Plaintiff, : <br>  : <br> v. : <br>  : <br> TRUSTMARK INSURANCE COMPANY, : <br> 400 Field Drive : <br> Lake Forest, IL  60045 : <br>  : <br> Defendant. : | |

**PLAINTIFF, PHILADELPHIA FLYERS, INC.'S RESPONSE IN OPPOSITION TO
DEFENDANT, TRUSTMARK INSURANCE COMPANY'S MOTION
TO COMPEL ARBITRATION AND TO STAY LEGAL PROCEEDINGS**

Plaintiff, Philadelphia Flyers, Inc., by and through its undersigned counsel, hereby seeks an Order denying Defendant, Trustmark Insurance Company's Motion to Compel Arbitration and to Stay Legal Proceedings, for the reasons set forth in accompanying Memorandum of Law, which is attached hereto and incorporated herein by reference.

Respectfully submitted,


By: _____
Peter J. Deeb, Esquire
Atty. I.D. No. 42281
FREY, PETRAKIS, DEEB, BLUM,
BRIGGS & MITTS, P.C.
1601 Market Street, 26th Floor
Philadelphia, PA  19103
(215) 563-0500

Attorney for Plaintiff,
Philadelphia Flyers, Inc.

Dated:  June 18, 2004

IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PHILADELPHIA FLYERS, INC., <br> 3601 South Broad Street <br> Philadelphia, PA  19148 <br><br> Plaintiff, <br><br> v. <br><br> TRUSTMARK INSURANCE COMPANY, <br> 400 Field Drive <br> Lake Forest, IL  60045 <br><br> Defendant. | : <br> : CIVIL ACTION NO. <br> : 2:04-CV-2322 <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : |

**PLAINTIFF, PHILADELPHIA FLYERS, INC.'S MEMORANDUM OF LAW
IN OPPOSITION TO DEFENDANT, TRUSTMARK INSURANCE COMPANY'S
MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS**

Plaintiff, Philadelphia Flyers, Inc. ("The Flyers"), by and through its undersigned counsel, hereby seeks an Order denying Defendant, Trustmark Insurance Company's ("Trustmark") Motion to compel arbitration and to stay these legal proceedings.

**I.     FACTS AND PROCEDURAL HISTORY**

This dispute arises out of Trustmark's failure to honor a disability insurance agreement, entered into between Trustmark, as the insurer, and the National Hockey League Trust ("NHL"), as the policyholder.  (A true and correct copy of the policy at issue is attached hereto, incorporated herein and marked as Exhibit A).  The Flyers are a major league professional ice hockey team, playing in the City of Philadelphia as a member of the National Hockey League.  After the policy was negotiated and entered into between Trustmark and the NHL, a certificate of insurance unilaterally drafted by Trustmark was provided to The Flyers.  (A true and correct copy of said certificate of insurance is

attached hereto, incorporated herein and marked as Exhibit B).  While the negotiated insurance policy itself did not contain an arbitration clause, the certificate of insurance contains the following pre-printed form arbitration clause.

> **Arbitration:** Any dispute arising from this contract between the Policyholder, the NHL or any club on one hand, and BWD or Us on the other shall be submitted to binding arbitration.  The Commercial Arbitration Rules of the American Arbitration Association shall apply, except with respect to selection of the arbitration panel and location.
>
> Each party to the arbitration shall select one arbitrator.  A third independent arbitrator shall be selected by the first two arbitrators.  Arbitration shall be held in a location agreed to by the parties.  If no location can be agreed upon, arbitration shall be held in a location agreed to by the parties.  If no location can be agreed upon, arbitration shall be held at the then current main corporate office of the American Arbitration Assocation.  If the American Arbitration Association is not in existence or its offices unavailable, arbitration shall be conducted in Our home office.
>
> The costs of arbitration shall be borne equally by all of the parties hereto.

(See Exhibit B).

Trustmark seeks to bind The Flyers to this arbitration clause.  The Flyers request that this Court deny Trustmark's Motion to compel arbitration, because The Flyers did not enter into any agreement to arbitrate with Trustmark and because the arbitration clause is itself unconscionable.

The Flyers were listed as a beneficiary under this Trustmark-NHL disability policy.  (See Exhibit B).  However, The Flyers were not given an opportunity to participate in the negotiation of the Trustmark-NHL policy or any of its terms or conditions.  (A true and correct Affidavit of Lewis R. Bostic on behalf of The Flyers is attached hereto, incorporated herein and marked as Exhibit C; see Exhibit C at ¶ 5).  Nor were The Flyers free to obtain their own

disability insurance coverage elsewhere. (See Exhibit C, ¶ 6). Instead, The Flyers were required to take part in the coverage and to pay for this coverage, notwithstanding that The Flyers were non-signatories to the insurance agreement negotiated and entered into between Trustmark and the NHL alone. (See Exhibit C, ¶ 4).

The Trustmark-NHL policy generally provides for the reimbursement of an insured player's salary during a period of disability that results in the player's inability to play professional ice hockey. (See Exhibits A-B). The Flyers' Rick Tocchet ("Tocchet") was one such hockey player entitled to insurance coverage under this Trustmark-NHL disability policy. (See Exhibit B). In the fall of 2001, Tocchet suffered serious injuries to his left knee and back, rendering him disabled and incapable of playing professional ice hockey. (See Exhibit C, ¶ 9).

In light of these injuries, The Flyers made a claim under the Trustmark-NHL disability policy. (See Exhibit C, ¶ 10). However, Trustmark wrongfully, and without a good faith basis, refused to reimburse The Flyers for 12 games missed by Tocchet between January 17, 2002 and February 12, 2002. This resulted in approximately $257,560.92 in damages to The Flyers.

Consequently, The Flyers filed suit in the Commerce Court of the Philadelphia Court of Common Pleas for: (I) breach of contract; (II) breach of contract/third party beneficiary; and (III) bad faith under 42 Pa.C.S.A. § 8371. Trustmark thereafter removed this matter to this Court for reasons of diversity. The Flyers did not oppose removal. Then, on June 4, 2004, Trustmark filed a Motion to compel arbitration and to bring these legal proceedings to a halt. The

Flyers herein oppose Trustmark's Motion and respectfully request that these legal proceedings be permitted to rightfully proceed to conclusion in this Court.

## II. ARGUMENT

Inasmuch as this litigation has been removed to this Court, Trustmark's Motion is now controlled by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq. However, our courts have held that the FAA, the Pennsylvania Uniform Arbitration Act ("PUAA"; see 42 Pa.C.S.A. § 7304), and the case law that has developed under each Act, are "functionally equivalent" with regard to the authority of a district court to review a purported agreement to arbitrate. See Painewebber, Inc. v. Hartmann, 921 F.2d 507, 510 n.3 (3d Cir. 1990) (comparing the FAA with the PUAA, and referring to these Acts interchangeably); Lytle v. Citifinancial Services, Inc., 810 A.2d 643, 656 (Pa. Super. 2002) (finding "no appreciable difference" between Pennsylvania law and the FAA). Consequently, an examination of both federal and Pennsylvania state law on this issue follows.

"[T]he existence of an arbitration provision and a liberal policy favoring arbitration does not require the rubber stamping of all disputes subject to arbitration." McNulty v. H&R Block, Inc., 843 A.2d 1267, 1271 (Pa. Super. 2004). The issue of whether a particular dispute falls within a contractual arbitration provision is a matter of law for the Court to decide. See Painewebber, 921 F.2d at 511. In order to determine whether a claim is subject to arbitration, this Court must decide the following questions:

(1) whether a valid agreement exists between the parties; and

(2) whether the dispute falls within the scope of the agreement.

Id.

With regard to the first question, our courts have uniformly held that "no party can be forced to arbitrate unless that party has entered into an agreement to do so." Id. (citing AT&T Technologies v. Communications Workers of America, 475 U.S. 643 (1986) (arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit). "This axiom recognizes the fact that arbitrations derive their authority to resolve disputes only because the parties agreed in advance to submit such grievances to arbitration." AT&T, 475 U.S. at 648. Thus, instantly, The Flyers should not be forced to arbitrate because they did not enter into any agreement to do so. Rather, Trustmark simply placed such a pre-printed clause into the certificate of insurance after the policy had been negotiated and entered into between Trustmark and the NHL alone.

Moreover, the Federal Arbitration Act itself provides that an arbitration provision may be challenged using traditional contract defenses such as duress, illegality, fraud or unconscionability. See 9 U.S.C. § 2 (an agreement in writing to submit to arbitration…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract). This Court must look to the relevant state law of contracts in evaluating whether the parties entered into a valid agreement to arbitrate. See Alexander v. Anthony International, L.P., 341 F.3d 256, 264 (3d Cir. 2003).

"In analyzing the contract, we must take care to note the surrounding circumstances, the situation of the parties when the contract was made, and the objects they apparently had in view and the nature of the subject matter." McNulty, 843 A.2d at 1272. The Court's role is greater than simply determining

whether a contract containing an arbitration provision has been signed. Id. A contract term is unconscionable if:

> (1)   there was no meaningful choice on the part of the party regarding acceptance of the provisions; and
>
> (2)   the contractual terms are unreasonably favorable to the drafter.

Id. at 1273. (arbitration clause unconscionable where contract was one of adhesion and cost of arbitration was prohibitive); Lytle, 810 A.2d at 658 (case remanded where one-sided arbitration clause contained within adhesion contract created a presumption of unconscionability; costs of arbitration as contrasted to court proceedings to be examined on remand in determining whether arbitration clause is unconscionable); Carll v. The Terminix International Co., L.P., 793 A.2d 921 (Pa. Super. 2002) (arbitration clause containing limitation of damages language unconscionable); Zak v. Prudential Property & Casualty Ins. Co., 713 A.2d 681 (Pa. Super. 1998) (arbitration clause making award binding only if award was less than $15,000 found to be one-sided and unconscionable). See also Elcom Technologies v. Amer. Dynasty Surplus Lines Ins. Co., 2001 WL 1843378 at *11 (E.D. Pa. 2001) (finding certain portions of an arbitration clause to be unconscionable where it required application of Delaware law even though the parties had no connection to that state, and it prohibited the arbitrators from considering certain well-established pro-insured rules of policy construction such as *contra proferentum* and the doctrine of reasonable expectations).

The first prong of the two-part unconscionability test can be met by showing that the contract is a classic adhesion contract; i.e., a form contract prepared by one party, to be signed by another party in a weaker position, who has little choice about the terms. See McNulty, 843 A.2d at 1273; Lytle, 810 A.2d at 658. See also Elcom, 2001 WL 1843378 at *12, offering this alternative definition of an adhesion contract:

> The term [contract of adhesion] refers to a standardized contract prepared entirely by one party to the transaction for the acceptance of the other; such a contract, due to the disparity in bargaining power between the draftsman and the second party, must be accepted or rejected by the second party on a 'take it or leave it' basis, without opportunity for bargaining and under such conditions that the 'adherer' cannot obtain the desired product or service save by acquiescing in the form agreement.

Id.

Although contracts of adhesion are usually found in consumer cases, "even when some level of sophistication may be assumed from the business setting of a transaction, this alone is not determinative." Elcom, 2001 WL 1843378 at *11. "A demonstration of sophistication in insurance matters in particular is required when an insurance policy is otherwise shown to be a contract of adhesion." Id. (finding insurance policy to be a contract of adhesion where it was merely a standard, pre-printed contract, involving no negotiation).

Given this background and case law, the Court ought to have little difficulty concluding that the insurance agreement at issue was a contract of adhesion in which The Flyers lacked any meaningful choice. The arbitration clause was a pre-printed "take it or leave it" provision drafted by the insurer, Trustmark, with no input from The Flyers. (See Exhibit C, ¶¶ 4-7). It was subject to no negotiation by The Flyers. (See Exhibit C, ¶¶ 4-7). The arbitration clause at issue was merely sent to The Flyers after the policy had

been negotiated by and entered into solely between Trustmark and the NHL. (See Exhibit C, ¶ 7). The Flyers were required to pay for the policy as a member of the NHL and had no power or opportunity to bargain any terms connected thereto. (See Exhibit C, ¶¶ 4-5). The Flyers were not authorized to participate in the negotiation of this disability policy or any of its terms. (See Exhibit C, ¶ 5). Nor were The Flyers allowed to obtain their own disability insurance coverage elsewhere. (See Exhibit C, ¶ 6). Thus, the arbitration clause was a classic contract of adhesion, whereby The Flyers lacked any opportunity to bargain, and first prong of unconscionability is satisfied.

With regard to the second prong of the two-part unconscionability test, the arbitration clause at issue unreasonably favors Trustmark in a number of ways. First, the costs of proceeding with this matter in arbitration are oppressive, when compared to the costs of litigating this matter in the courts. Our courts have determined that an arbitration clause may be deemed unconscionable if the costs associated with the arbitration are so high, that it would effectively deny the claimant "access to justice." See McNulty, 843 A.2d at 1274; Lytle, 810 A.2d at 666-68. "Goals favoring arbitration of civil disputes must not be used to work oppression." Lytle, 870 A.2d at 668. "When the goals given in support of contract clauses like this are used as a sword to strike down access to justice instead of as a shield against prohibitive costs, we must defer to the overriding principle of justice." Id. at 668. Evidence on the issue of the costs of arbitration, as contrasted to court proceedings (e.g., average daily rate of compensation for an arbitrator, filing fees, administrative fees, deposits, etc.), is highly relevant because "having to advance such substantial sums [to

proceed in arbitration versus in court] will deter many litigants from proceeding." Id. at 667.

In the case at bar, court costs amount to the $399.50 filing fee (already paid to the Philadelphia Court of Common Pleas prior to removal) and legal fees. In contrast, in order to bring this case to arbitration, the following costs would be incurred in addition to legal fees: $325.00 case set-up fee; $4,250.00 initial filing fee; and $1,750.00 case service fee. See American Arbitration Association, Commercial Arbitration Rules and Mediation Procedures at adr.org. In addition, the arbitrators would have to be compensated at the rate of $7,302.00 per day ($2,434.00 being the average cost of a AAA arbitrator in Philadelphia, multiplied by 3 arbitrators needed). See mediation panel resumes, referencing fees payable at mediatorindex.com. Furthermore, the arbitrators' compensation rate does not include additional charges for arbitrators' administrative time, conference calls, pre- and post-arbitration study time, preparation for arbitration, travel time and expenses, or settlement negotiations, all of which are billed at an average rate of $303.00 per hour. These rates also do not include cancellation fees ranging from $600.00 to $2,000.00 in the event of settlement. Finally, there are the additional costs for a stenographer and the rental of the arbitration hearing room. These are all fees which The Flyers would not have to incur *at all* if the case were to proceed in this Court. Clearly, spending such a great deal of money in arbitration, in addition to legal fees, to risk getting back only $257,560.92, or nothing at all, is cost-prohibitive and designed to deter claimants with legitimate disputes, such as The Flyers, from proceeding at all.

In addition, arbitration unreasonably favors Trustmark because, if this case goes to arbitration, The Flyers will be prevented from taking depositions and other discovery vital to its case. Precluding The Flyers from taking discovery, as provided for under the Federal Rules, substantially benefits Trustmark because The Flyers have the burden of proof. Further, Trustmark already has the advantage of having received all of the The Flyers' documentation and other evidence, which The Flyers were required to produce at the time when The Flyers filed their claim for under the disability policy. Thus, unlike The Flyers, Trustmark has no urgent need to conduct discovery.

Additionally, enforcing the arbitration clause against The Flyers in this situation unreasonably favors Trustmark because it encroaches upon The Flyers' constitutionally guaranteed rights to a jury trial, since there was never a knowing or voluntary waiver of The Flyers' day in court before a jury. See U.S CONST. amend. VII; PA CONST. Art. I, § 6. See also Nealy v. State Farm Mut. Auto. Ins. Co., 695 A.2d 790, 793 (Pa. Super. 1997), stating that requiring arbitration of bad faith claims in particular would rob claimants of their opportunity to exercise their Seventh Amendment right to a trial by jury.

As recognized by the United States Supreme Court, arbitration is not the equivalent of a trial by jury. See Bernhardt v. Polygraphic Co. of America, 350 U.S. 198 (1956), disagreeing with the conclusion that arbitration is merely another form of trial, and stating as follows:

> [A]rbitration, whatever its merits or shortcomings, substantially affects the cause of action…The change from a court of law to an arbitration panel may make a radical difference in [the] ultimate result. Arbitration carries with it no right to trial by jury that is guaranteed…by the Seventh Amendment…Arbitrators do not have the benefit of judicial instruction on the law; they need not give their reasons for their results; the record of their proceedings is

>     not as complete as it is a court trial; and judicial review of an award is more limited than judicial review of a trial...

Bernhardt, 350 U.S. at 202-03.

Furthermore, enforcing the arbitration clause against The Flyers unreasonably favors Trustmark and prejudices The Flyers because it remains to be conclusively resolved by our Courts as to whether a Pennsylvania statutory bad faith claim, which The Flyers have made a part of their Complaint, may subject to arbitration, or instead must be decided by a court.  See Nealy v. State Farm Mut. Auto. Ins. Co., 695 A.2d 790 (Pa. Super. 1997) (statutory bad faith claim cannot be decided by arbitration panel, but must be decided by court pursuant to statute), allocator denied, Nealy v. State Farm Mut. Auto. Ins. Co., 717 A.2d 1028 (Pa. 1998).  See also 42 Pa.C.S.A. § 8371, providing that "the court" acts as the finder and imposes any interest, punitive damages, and attorneys' fees and costs, if necessary.  Cf. Elcom, 2001 WL 1843378 (bifurcating the bad faith claim from the remaining claims); Brayman Construction Corp. v. Home Insurance Co., 319 F.3d 622 (3d Cir. 2003) (holding that all claims, including the bad faith claim, were subject to arbitration where parties voluntarily entered into agreement to arbitrate). Instantly, even bifurcating the bad faith claim from the remaining claims would double The Flyers' costs, which are already oppressive going through arbitration alone.  Thus, the main purpose of arbitration (i.e., to lower costs, resolve suits quicker and more easily) would be entirely frustrated.

Finally, the arbitration clause at issue contains a cost-splitting provision, which would require The Flyers to pay half of the costs of any arbitration.  This clause is unconscionable, contrary to public policy, and unreasonably favors Trustmark because it attempts to circumvent the Pennsylvania bad faith

statute. The Pennsylvania bad faith statute was intended to protect insureds from bad faith denials of coverage by insurers such as Trustmark. General Acc. Ins. Co. v. Federal Kemper Ins. Co., 682 A.2d 819, 822 (Pa. Super. 1996). As such, 42 Pa.C.S.A. § 8371 provides for the assessment of costs and attorneys' fees against the insurer and in favor of a prevailing plaintiff. See Section 8371(3). Thus, pursuant to Section 8371(3) and contrary to the arbitration clause, Trustmark ought to be completely responsible for all costs and attorneys' fees if and when The Flyers prevail in their claims against Trustmark. See Giordano v. Pep Boys—Manny, Moe & Jack, Inc., 2001 WL 484360 (E.D. Pa. 2001) (cost-sharing provision in arbitration clause found to unconscionable and unenforceable; matter submitted to arbitration, though court required defendant to bear all costs of arbitration over and above filing fees for which plaintiff would be responsible if he were filing his claim in federal court).

## III.   CONCLUSION

In light of the above considerations, the arbitration clause contained in the NHL-Trustmark policy ought not be applied to compel arbitration of The Flyers' causes of action against Trustmark. Consequently, The Flyers respectfully request that this Honorable Court deny the Motion to Compel Arbitration and to Stay Legal Proceedings filed by Trustmark in connection with this litigation.

Respectfully submitted,

By: _____
Peter J. Deeb, Esquire
Atty. I.D. No. 42281
FREY, PETRAKIS, DEEB, BLUM,
BRIGGS & MITTS, P.C.
1601 Market Street, 26th Floor
Philadelphia, PA  19103

                                          (215) 563-0500

                                          Attorney for Plaintiff,
Dated:  June 18, 2004                    Philadelphia Flyers, Inc.

**CERTIFICATE OF SERVICE**

I, Peter J. Deeb, Esquire, hereby certify that I served a true and correct copy of the foregoing Response in Opposition to Motion to Compel Arbitration and to Stay Legal Proceedings, by first class mail, postage prepaid on June 18, 2004, as follows:

>Stephen C. Baker, Esq.
>Drinker, Biddle & Reath, LLP
>One Logan Square
>18th and Cherry Streets
>Philadelphia, PA 19103-6446

_____
Peter J. Deeb, Esquire
Attorney for Plaintiff,
Philadelphia Flyers, Inc.