IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THE PHILADELPHIA FLYERS, INC. : CIVIL ACTION
:
v. :
:
TRUSTMARK INSURANCE COMPANY : NO. 04-2322

**O R D E R - M E M O R A N D U M**

**AND NOW**, this 6th day of July, 2004, upon consideration of Defendants' "Motion to Compel Arbitration and to Stay Legal Proceedings" (Docket No. 4), Plaintiffs' response thereto, and the argument held in open court on June 25, 2004, **IT IS HEREBY ORDERED** that the Motion is **GRANTED** and this matter is **STAYED** pending arbitration of the claims raised in Plaintiff's complaint. **IT IS FURTHER ORDERED** that the Clerk of Court shall mark this action **CLOSED** for statistical purposes and place the matter in the Civil Suspense File, and it is

**FURTHER ORDERED** that the Court shall retain jurisdiction; and, upon completion of the arbitration proceedings, the prevailing party shall bring the results of the arbitration to the attention of the Court so that an appropriate order may be entered.

I. BACKGROUND

The Complaint alleges the following facts. Defendant, Trustmark Insurance Co. ("Trustmark"), entered into an insurance contract with the National Hockey League Trust ("NHL Trust") for the provision of Temporary Total Disability ("TTD") coverage for certain players on NHL teams, including the Plaintiff Philadelphia

Flyers, Inc. (the "Flyers"), for the period of October 2001 through April 2002 (the "Insurance Contract"). (Compl ¶ 4.) As a member of the NHL, Plaintiff was compelled to take part in the coverage and to pay for the coverage provided. (Compl. ¶ 5.) Alternatively, Plaintiff entered into a contract with Trustmark, through the NHL Trust, for TTD coverage for certain players on the Flyers for the period of October 2001 through April 2002. (Compl. ¶ 6.)

The insurance policy issued to Plaintiff apparently provides for the reimbursement of an insured player's salary, subject to certain limitations, during a period of disability that results in a player's inability to play hockey. (Compl. ¶ 8.) In the Fall of 2001, Rick Tocchet ("Tocchet"), one of the insured players, was injured such that he was incapable of playing hockey. (Compl. ¶ 9.) Following his medical treatment for the injury, a period of time was necessary to permit the injury to fully heal. (Compl. ¶ 14.) Tocchet was not permitted to skate from the Fall of 2001 through January 2002. (Compl. ¶ 15.) In mid-February of 2002, he resumed playing for the Flyers. (Compl. ¶ 18.)

In light of Tocchet's injury, Plaintiff made a claim for reimbursement of his salary for the twenty-seven games that Tocchet missed between December 16, 2001 and February 12, 2002. (Compl. ¶ 20.) Trustmark reimbursed Plaintiff for fifteen games that Tocchet missed between December 16, 2001 and January 16, 2002, but refused to reimburse Plaintiff for the twelve games he missed between

January 17, 2002 and February 12, 2002. (Compl. ¶ 20-21.)

The Complaint asserts claims for breach of contract, alleging that the Insurance Contract was entered into by Plaintiff, through the NHL Trust, and Trustmark (Count I); for breach of contract, alleging that Plaintiff is an intended third party beneficiary of the Insurance Contract (Count II); and for bad faith, alleging that Trustmark denied a portion of Plaintiff's insurance claim without a good faith basis, in violation of Pennsylvania's insurance bad faith statute, 42 Pa. Con. Stat. Ann. § 8371 (Count III). The Complaint requests monetary damages in an amount in excess of $300,000, punitive damages, attorney's fees, interest and costs of litigation.

There are three documents pertaining to the insurance at issue in this case which are stapled together: the specimen copy of the Master Policy, the Certificate of Insurance, and Endorsement No. 1. (Def.'s Ex. A.) Trustmark has filed a Motion to Compel Arbitration and to Stay Legal Proceedings based upon an arbitration clause contained in the Certificate of Insurance. The arbitration clause states as follows:

> Any dispute arising from this contract between the Policyholder, the NHL, or any club on one hand, and BWD or Us on the other hand shall be submitted to binding arbitration. The Commercial Arbitration Rules of the American Arbitration Association shall apply, except with respect to selection of the arbitration panel and location.
>
> Each party to the arbitration shall select one

> arbitrator. A third independent arbitrator shall be selected by the first two arbitrators. Arbitration shall be held in a location agreed to by the parties. If no location can be agreed upon, arbitration shall be held at the then current main corporate office of the American Arbitration Association. If the American Arbitration Association is not in existence or its offices are unavailable, arbitration shall be held in Our home office.
>
> The costs of arbitration shall be borne equally by all of the parties thereto.

(Def.'s Ex. A, Certification at 10.)

II. LEGAL STANDARD

Trustmark contends that this Court must enforce the arbitration clause pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16. Section 2 of the FAA provides that:

> [a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. Upon application of one of the parties to an action in federal court which involves an issue which is subject to an agreement for arbitration, the court must "stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 9. In deciding a motion to compel arbitration, the Court considers two questions: 1)

whether the parties are subject to a valid arbitration agreement and 2) whether their dispute falls within the language of the arbitration agreement.  Dabney v. Option One Mortgage Corp., No. Civ. A. 00-5831, 2001 WL 410543 at *1 (E.D. Pa. Apr. 19, 2001) (citing John Hancock Mutual Life Ins. Co. v. Olick, 151 F.3d 132, 137 (3d Cir. 1998)).

**III. Discussion**

It is undisputed that the claims asserted in the Complaint are within the scope of the arbitration clause.  The issue before the Court, therefore, is whether the arbitration clause is enforceable against Plaintiff.  Plaintiff opposes enforcement of the arbitration clause on two grounds.  Plaintiff argues that the arbitration clause is not part of the Insurance Contract. Plaintiff also contends that it would be unconscionable to enforce the arbitration clause against it because it was not a party to the Insurance Contract and, therefore, did not enter into an agreement to arbitrate disputes with respect to that Insurance Contract.

Plaintiff claims that Trustmark's obligation to pay Tocchet's salary arises under the Master Policy, but that the agreement to arbitrate arises only under the Certificate of Insurance. Plaintiff maintains that the Certificate of Insurance is not part of the Master Policy and, therefore, does not bind the parties to, or third-party beneficiaries of, the Master Policy.  Plaintiff relies on the following language regarding Certificates which

5

appears on the last page of the Master Policy: "[t]he Certificate(s) designated below, and any amendments or riders thereto; are attached to and made part of the Policy."  (Ex. A, Master Policy at 8.)  The portion of the page underneath the "Certificate(s)" clause of the Master Policy contains approximately four inches of blank space, and no certificates are designated on that page.  The Certificate of Insurance at issue in this proceeding begins on the next page.  Plaintiff argues that the Certificate of Insurance is, therefore, not made a part of the Master Policy because it is not designated "below" or lower on the page of the Master Policy which contains the "Certificate(s)" language.  However, the dictionary defines "below" as "lower on the same page **or on a following page**."  Webster's Ninth New Collegiate Dictionary at 143 (1990) (emphasis added).  Accordingly, the Court finds that the Certificate of Insurance is "designated below" and, therefore, is attached to and made part of the Master Policy.

Plaintiff also asserts that enforcement of the arbitration clause against it in this case would be unconscionable because it did not enter into an agreement to arbitrate. In Painewebber, Inc. v. Hartmann, the United States Court of Appeals for the Third Circuit ("Third Circuit") stated that "[a]s a matter of contract, no party can be forced to arbitrate unless that party has entered into an agreement to do so."  921 F.2d 507, 511 (3d Cir. 1990) (citing AT&T Technologies v. Communications Workers of

America, 475 U.S. 643 (1986)).  In deciding whether an arbitration agreement can be enforced against a non-signatory, the courts "ask whether he or she is bound by that agreement under traditional principles of contract and agency law."  Bel-Ray Co., Inc. v. Chemrit (Pty) Ltd., 181 F.3d 435, 444 (3d Cir. 1999) (citations omitted).  The courts have recognized "six theories for binding a non-signatory to an arbitration agreement: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third party beneficiary."  Bridas S.A.P.I.C. v. Government of Turkmenistan, 345 F.3d 347, 356 (5th Cir. 2003). The third party beneficiary and estoppel theories apply to the instant dispute.

The Complaint alleges that the Flyers "are an intended third party beneficiary of the Contract between Defendant Trustmark and the National Hockey League Trust."  (Compl. ¶ 32.)  The Third Circuit has recognized that a third party beneficiary of a contract is bound by contract terms requiring arbitration "where its claim arises out of the underlying contract to which it was an intended third party beneficiary." E.I. DuPont de Nemours and Co. v. Rhone Poulenc Fiber and Resin Intermediates, S.A.S., 269 F.3d 187, 195 (3d Cir. 2001).  Plaintiff's claim for breach of the Insurance Contract clearly arises under the Insurance Contract between Trustmark and the NHL Trust.  The Court finds that the arbitration clause of the Insurance Contract requires arbitration of the claims

brought by the Flyers as a third party beneficiary of that contract.

The Third Circuit has also recognized that principles of equitable estoppel may require a non-signatory to be bound by an arbitration clause. "[C]ourts have held non-signatories to an arbitration clause when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." Id. at 199 (citing Thomson-CSF, S.A. v. American Arbitration Assoc., 64 F.3d 773, 778 (2d Cir. 1995)). The doctrine of equitable estoppel means, in an arbitration context, that:

> a party may be estopped from asserting that the lack of his signature on a written contract precludes enforcement of the contract's arbitration clause when he has consistently maintained that other provisions of the same contract should be enforced to benefit him. "To allow [a plaintiff] to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act."

International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH, 206 F.3d 411, 413-14 (4th Cir. 2000) (quoting Avila Group, Inc. v. Norma J. of California, 426 F. Supp. 537, 542 (S.D.N.Y. 1977)); see also E.I. DuPont, 269 F.3d at 200 (noting that, under the theory of equitable estoppel, "courts prevent a non-signatory from embracing a contract, and then turning its back on the portions of that contract, such as an arbitration clause, that it finds

distasteful.") (citations omitted).  In this case, the Flyers have embraced, and seek to enforce, the Insurance Contract between Trustmark and the NHL Trust to the extent that it provides hundreds of thousands of dollars in TTD benefits in reimbursement of Tocchet's salary.  Indeed, Plaintiff has accepted payment from Trustmark pursuant to the Insurance Contract for reimbursement of Tocchet's salary for 15 games he missed between December 16, 2001 and January 16, 2002.  (Complaint ¶ 20.)  In fact, the only portion of the Insurance Contract which Plaintiff appears to reject is the arbitration clause.  The Court finds that the doctrine of equitable estoppel applies to prevent Plaintiff from avoiding its obligation to engage in arbitration in this case.

For the reasons stated above, the Court finds that the arbitration clause is enforceable against the Flyers as a third-party beneficiary of the Insurance Contract; that the doctrine of equitable estoppel requires the enforcement of the arbitration clause in this case; and that enforcement of the arbitration clause against the Flyers would not be unconscionable.

BY THE COURT:

_____
John R. Padova, J.